Charles MIDDLETON, as Dean of the College of Arts and Sciences; and Leon Travis, as Assistant to the Dean of the College of Arts and Sciences, Petitioners,

v.

Veta M. HARTMAN, Respondent.

No. 00SC809.

Supreme Court of Colorado,
En Banc.

April 15, 2002.

As Modified on Denial of Rehearing
May 13 and June 10, 2002.

Hogan & Hartson L.L.P., Kathryn W. Bradley, Denver, Colorado, Pryor Johnson Montoya Carney & Karr, P.C., Elizabeth C.

Moran, Scott S. Nixon, Englewood, Colorado, Office of University Counsel, Joanne M. McDevitt, Denver, Colorado, Attorneys for Petitioners.

Miller & Jester, LLC, Jay S. Jester, Denver, Colorado, Silver & DeBoskey, P.C., Bruce H. DeBoskey, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

This case requires us to determine whether the notice-of-claim provisions of the Colorado Governmental Immunity Act (CGIA), § 24–10–109, 7 C.R.S. (2001), apply to a claim against state employees sued in their individual capacities for retaliation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215 (1994).[1] We hold that state employees do not enjoy sovereign immunity when sued in their individual capacities for willful and wanton conduct because, under these circumstances, relief is not sought from the state but only from the employees individually. Furthermore, although the General Assembly intended for the notice-of-claim provisions of the CGIA to apply regardless of whether sovereign immunity exists, we find that the CGIA's notice-of-claim provisions are preempted by the FLSA. Therefore, we conclude that the CGIA's notice-of-claim provisions do not apply to an FLSA retaliation claim against state employees sued in their individual capacities. We therefore affirm.

I. Facts and Procedure

Veta Hartman (Hartman) was employed by the University of Colorado (the University) from October 1964 until she voluntarily resigned in May 1994. In 1993, Hartman requested and received payment for 224 hours of overtime, totaling $5,673.70. As a result of an audit conducted in 1994, when Hartman voluntarily retired, the University determined that Hartman was an exempt employee under the FLSA and had been overcompensated by $5,120.00 for the overtime hours. The University demanded that the money be repaid. In lieu of repayment, the chairman of Hartman's department proposed that Hartman be allowed to work off the overcompensation through a temporary position at the University. Hartman pursued temporary openings at the University. But, according to Hartman's complaint, after being turned down for several temporary positions, Hartman was informed by another employee that Charles Middleton (Middleton), Dean of the College of Arts and Sciences, and Leon Travis (Travis), Assistant to the Dean of the College of Arts and Sciences, had instructed others at the University, verbally and by electronic mail, that Hartman was not to be hired because she was untrustworthy, had violated University rules, and had broken the law. Hartman was not rehired.

Hartman filed a complaint in state court in September 1996 after voluntarily dismissing her pending claims in federal court.[2] The

---

1. The parties do not appeal the court of appeals' decision in this case that the CGIA bars Hartman's FLSA retaliation claim against the University. *Hartman v. Regents of the Univ. of Colo.*, 22 P.3d 524, 529 (Colo.Ct.App.2000). Therefore, the only remaining claim is Hartman's FLSA retaliation claim against Middleton and Travis in their individual capacities. As a result, the issues on certiorari, although stated broadly, concern only claims against state employees in their individual capacities. The precise issues on which we granted certiorari are:

1) In light of *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), and related decisions, do the notice provisions of the Colorado Governmental Immunity Act, § 24–10–109, 7 C.R.S. (CGIA), apply to the Plaintiff's claim against State of Colorado employees for retaliation under the Fair Labor Standards Act, 29 U.S.C. § 215—a non-constitutional federal claim.

2) May the Plaintiff avoid complying with the CGIA's notice of claim requirement in her suit against State employees for retaliation under the FLSA, merely because she has sued the employees in their individual, rather than official capacities, and the employees do not, in fact, enjoy sovereign immunity from suit on such claims.

2. While Hartman's federal suit was pending, the United States Supreme Court announced its opinion in *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In *Seminole Tribe*, the Court held that the Commerce Clause did not authorize Congress to limit the immunity of states from lawsuits in federal courts under the Eleventh Amendment. *Id.* at 73, 116 S.Ct. 1114. Because the FLSA was enacted pursuant to the Commerce Clause, Hartman and the University moved separately to dismiss Hartman's federal action in light of *Seminole Tribe*. The federal court dismissed the suit.

complaint alleged, among other claims,[3] that the University and Middleton and Travis had retaliated against her for exercising her rights under the FLSA in violation of 29 U.S.C. § 215(a)(3). Asserting that *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), should be applied to grant it immunity in cases brought against it in state court, the University filed a motion to dismiss Hartman's FLSA claims. Middleton and Travis filed a separate motion to dismiss Hartman's retaliation claims under the FLSA on the ground that they also enjoyed sovereign immunity.

The trial court denied the motions based upon its conclusion that neither the University nor Middleton and Travis enjoyed sovereign immunity from the FLSA claims. The University and Middleton and Travis appealed, and the court of appeals affirmed in part and reversed in part. The court of appeals held that the University is an arm of the state and therefore is entitled to the constitutional sovereign immunity described in *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). *Hartman,* 22 P.3d at 528. Because Hartman had conceded that an FLSA retaliation claim "lies in tort," the court of appeals found that the sovereign immunity reflected in the CGIA bars the retaliation claim against the University. *Id.* at 529. The court of appeals therefore dismissed the FLSA retaliation claim against the University.[4] *Id.*

With respect to the claims against Middleton and Travis, the court of appeals affirmed the trial court's order, holding that state employees do not enjoy sovereign immunity when sued in their individual capacities for violating the FLSA retaliation provisions. *Id.* at 529–30. Relying on *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), and *Bauman v. Colorado Department of Health,* 857 P.2d 499 (Colo.Ct.App.1993), the court of appeals further held that the

CGIA's notice requirements cannot operate to preclude Hartman's FLSA retaliation claim against Middleton and Travis. *Id.* at 530.

In reaching our conclusion that the CGIA's notice-of-claim provisions do not apply to an FLSA retaliation claim against state employees in their individual capacities, we first address the issue of sovereign immunity. After concluding that state employees do not enjoy sovereign immunity when they are sued in their individual capacities for wilful and wanton conduct because the relief is sought from them personally, we next turn to whether the CGIA's notice-of-claim provisions apply to such claims despite the lack of sovereign immunity. In resolving this question, we must first consider whether the notice-of-claim provisions were intended to apply to such claims. We conclude that the CGIA's notice-of-claim provisions were meant to apply to suits against state employees in their individual capacities for wilful and wanton conduct despite the absence of sovereign immunity. However, because this is a federal claim, we must also address the issue of preemption. Thus, we must determine whether the FLSA preempts the application of the CGIA's notice-of-claim provisions. Because we find that the CGIA's notice-of-claim provisions "stand as an obstacle to the accomplishment and execution of the full objectives of Congress," we conclude that the FLSA preempts the notice-of-claim provisions in the CGIA. Therefore, we hold that the notice-of-claim provisions do not apply to a claim against state employees in their individual capacities for retaliation under the FLSA.

## II. Sovereign Immunity

### A. United States Supreme Court Precedent

The concept of sovereign immunity arose from the common law of England and was recognized as an accepted principle of law

---

3. Hartman asserted claims against the University for alleged violations of 42 U.S.C. § 1983 and the FLSA overtime provisions, 29 U.S.C. § 207(a), and against Middleton and Travis for alleged violations of 42 U.S.C. § 1983 and state tort law.

4. The court of appeals also dismissed Hartman's § 1983 claim against the University on the grounds that the CGIA bars the claim. *Hartman,*

22 P.3d at 528. However, the court of appeals found that the FLSA overtime claim against the University does not "lie in tort," and therefore is not within the immunity granted by the CGIA. *Id.* at 529, 22 P.3d 524. The FLSA overtime claim is the only claim that remains pending against the University, and is not part of this appeal.

early in our nation's history. *Alden*, 527 U.S. at 715, 119 S.Ct. 2240. "[A]lthough the American people had rejected other aspects of English political theory, the doctrine that a sovereign could not be sued without its consent was universal in the states when the Constitution was drafted and ratified." *Id.* at 715–16, 119 S.Ct. 2240 (citing *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 434–35, 1 L.Ed. 440 (1793)). Notwithstanding the presumed universality of this doctrine, the Supreme Court held in 1793 that a private citizen of South Carolina could in fact sue the State of Georgia without its consent. *Chisholm*, 2 U.S. at 420. Justice Iredell dissented, pointing out that prior to the adoption of the Constitution, a sovereign state, without its consent, was not amenable to suit at the hands of an individual, and concluded that because this rule had not been abrogated by the Constitution, the states maintained their sovereign right to be protected from suits without consent. *Id.* at 435–36, 448, 449–50 (Iredell, J., dissenting). Efforts to supersede the result reached in Chisholm by constitutional amendment began in both Houses of Congress within days of the decision, continued upon Congress' submission of the proposed amendment to the states for ratification in 1794, and culminated in the adoption of the Eleventh Amendment in 1798. See *Calvin R. Massey, State Sovereignty and the Tenth and Eleventh Amendments,* 56 U. Chi. L.Rev. 61, 111 (Winter 1989); *Alden*, 527 U.S. at 721, 119 S.Ct. 2240.

The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Amendment speaks only to suits filed by citizens of one state against another state, the Supreme Court held in *Hans v. Louisiana*, 134 U.S. 1, 21, 10 S.Ct. 504, 33 L.Ed. 842 (1890), that sovereign immunity barred suits against a state brought by its own citizens as well as those brought by citizens of another state. The court reasoned that the principle of sovereign immunity derives not just from the Eleventh Amendment, but from the structure and background principles of the Constitution. *Hans*, 134 U.S. at 11–12, 10 S.Ct. 504.

In *Alden v. Maine*, the Supreme Court extended state sovereign immunity under the United States Constitution well beyond its previously existing boundaries. Despite the suggestion of earlier Supreme Court decisions that states would be obligated to entertain federal causes of action against states in the state courts,[5] the Court in *Alden* held otherwise. *Alden* involved a suit by probation officers against the State of Maine in state court to recover overtime pay, attorneys' fees, and liquidated damages pursuant to the FLSA. 527 U.S. at 711–12, 119 S.Ct. 2240. Maine argued that it had not waived its sovereign immunity, and was thus immune from an FLSA suit in state court. *Id.* at 757–58, 119 S.Ct. 2240. The Supreme Court undertook an extensive review of the history of sovereign immunity and held that the Constitution is not limited to protecting states from lawsuits in federal court. Rather, the Constitution embodies a much broader principle of sovereign immunity that protects states from suits in their own courts. *Id.* at 742–43, 119 S.Ct. 2240. The Court specifically held "that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting states to private suits for damages in state court." *Id.* at 712, 119 S.Ct. 2240. Because Maine had not waived its sovereign immunity with respect to the FLSA claims and because Congress lacked the power under Article I to abrogate Maine's immunity, the Court affirmed the dismissal of the plaintiffs' FLSA suit. Thus, the attempt by Congress, pursuant to its Article I powers, to abrogate a state's sovereign immunity from FLSA suits in its own courts was unconstitutional.

---

5. *See Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 554–55, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (holding that Congress may enforce wage requirements against a local government's mass-transit authority); *see also New York v. United States,* 505 U.S. 144, 160, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (stating that in previous cases, the Court had interpreted the Tenth Amendment to authorize Congress to subject the states to generally applicable laws).

However, the Supreme Court found that there were "certain limits . . . implicit in the constitutional principle of state sovereign immunity." *Id.* at 755, 119 S.Ct. 2240. The Supreme Court outlined six exceptions to the doctrine of sovereign immunity. *Id.* at 755–57, 119 S.Ct. 2240. First, sovereign immunity does not bar a suit where the state has given consent. *Id.* at 755, 119 S.Ct. 2240. Second, states remain subject to suits brought by the Federal Government or by other states. *Id.* at 755–56, 119 S.Ct. 2240. Third, Congress retains the power to abrogate the sovereign immunity of the states pursuant to the Fourteenth Amendment's Section 5 enforcement power. *Id.* at 756, 119 S.Ct. 2240. Fourth, sovereign immunity does not bar private suits against municipal corporations or other lesser governmental entities. *Id.* at 756–57, 119 S.Ct. 2240. Fifth is the *Ex Parte Young* exception, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which allows certain private suits against state officers if the suit seeks only injunctive or declaratory relief to remedy an ongoing violation of law. *Id.* at 757, 119 S.Ct. 2240. Sixth, and of particular importance in this case, state officers may be sued for money damages in their individual capacity, as long as such relief is sought from the officers personally. *Id.* at 757, 119 S.Ct. 2240.

Thus, while it is clear after *Alden* that sovereign immunity bars suits against states that have not consented to being sued, determining whether a suit is against the state requires further analysis. Sovereign immunity, of course, generally bars suits in which the state is the named defendant. But sovereign immunity may also bar some suits in which the named defendant is a state official. There are two situations in which an action nominally against a public official is, in essence, an action against a governmental entity and should be treated as such for purposes of immunity analysis. First, it is well settled that a judgment against a public servant in his official capacity imposes liability not on the particular servant in office, but on the governmental entity the official represents. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Consequently, "an official-capacity suit is, in all respects other than in name,

to be treated as a suit against the entity." *Id.* at 166, 105 S.Ct. 3099. Second, " 'when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke sovereign immunity from suit even though individual officials are nominal defendants.' " *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)(quoting *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

Thus, the general rule for determining which suits against state officials are treated as suits against the state for sovereign immunity purposes is that "a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Indirect effects are not enough to trigger sovereign immunity. *Luder v. Endicott,* 253 F.3d 1020, 1023 (7th Cir.2001). But, a suit nominally against state employees in their individual capacities that has the identical effect as a suit against the state is barred. *Id.*

### B. Sovereign Immunity as Applied in this Case

Because the parties do not appeal the court of appeals' decision that the University is immune from Hartman's FLSA retaliation claim, we only address the applicability of sovereign immunity to Hartman's remaining FLSA retaliation claim against Middleton and Travis in their individual capacities. Middleton and Travis argue that Hartman's remaining FLSA retaliation claim is barred by sovereign immunity because it is really a claim against the state and they are only nominal defendants. Hartman argues that she has sued Middleton and Travis in their individual capacities for their "willful and wanton" retaliatory conduct, and not as nominal defendants. Therefore, Hartman claims

that under *Alden,* Middleton and Travis do not enjoy sovereign immunity.

As previously discussed, the sovereign immunity afforded to the state extends to public officials when the state is the real party against which relief is sought. *Edelman,* 415 U.S. at 663, 94 S.Ct. 1347. However, sovereign immunity does not foreclose an action against an individual state official, in his or her individual capacity, seeking damages solely from the individual state official, and not from the state treasury. *Id.* at 757, 94 S.Ct. 1347. Therefore, we must determine whether Hartman's claim is one that seeks redress from Middleton and Travis personally, or whether Hartman's claim is in essence a claim against the state.

Under the CGIA, the state may be liable for claims against one of its employees. Section 24–10–110(1)(b)(I) provides that the state is liable for

[t]he payment of all judgments and settlements of claims against any of its public employees where the claim against the public employee arises out of injuries sustained from an act or omission of such employee occurring during the performance of his duties and within the scope of employment, *except where such act or omission is willful and wanton or where sovereign immunity bars the action against the public entity.*

§ 24–10–110(1)(b)(I) (emphasis added). According to the express language of section 24–10–110(1)(b)(I), the state is not liable for its employees' willful and wanton conduct. Thus, the state would not be liable for any willful and wanton acts committed by Middleton and Travis. Rather, Middleton and Travis would be personally liable for any damage award. Furthermore, under section 24–10–110(1)(b)(I), the state is also not responsible for any judgments against individual defendants if sovereign immunity bars the action against the state. Thus, assuming arguendo, that Middleton and Travis' conduct was not willful and wanton, the state is still not liable because under the CGIA the state is immune

from Hartman's FLSA retaliation claim. *Hartman,* 22 P.3d at 529–30. In other words, regardless of the outcome of Hartman's claim against Middleton and Travis, the state does not incur liability. Because any damages awarded to Hartman would not "expend itself on the public treasury," the FLSA retaliation claim against Middleton and Travis plainly emerges as one not against the state. *Pennhurst State Sch.,* 465 U.S. at 101 n. 11, 104 S.Ct. 900.

Middleton and Travis assert, however, that if Hartman is unsuccessful in proving willful and wanton conduct, under section 24–10–110(1)(a), the state will be required to indemnify them for the defense costs associated with Hartman's suit. Thus, Middleton and Travis argue that because their defense costs must, under Colorado law, be paid from public funds in the state treasury, Hartman's claim is a suit against the state and is thus barred by sovereign immunity.

 Middleton and Travis are correct in that the CGIA requires the state to provide defense costs for all its employees unless the fact finder determines he or she was acting outside the scope of duty when the injury creating the liability occurred. § 24–10–110(1)(a). Section 24–10–110(1)(a) provides:

A public entity shall be liable for: (a) The costs of defense of any of its public employees, whether such defense is assumed by the public entity or handled by the legal staff of the public entity or by other counsel, ... except where such act or omission is willful and wanton. . . .

Thus, under section 24–10–110(1)(a), Middleton and Travis may be entitled to indemnification by the state for their defense costs if Hartman fails to prove that they acted willfully or wantonly. However, the purpose of state sovereign immunity is to protect the state against *involuntary* liability. *See Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir.1985). If the state chooses to pay defense costs for its employees, it has *voluntarily* assumed that liability. Sovereign im-

munity is concerned with claims that by their nature *must* be paid from public funds, not actions directed against individuals that may be satisfied with state monies solely because the state has *chosen* to provide indemnification. *See, e.g., Edelman,* 415 U.S. at 663–66, 94 S.Ct. 1347. Thus, although state monies may ultimately be used for defense expenses against a state official sued in his individual capacity when the plaintiff is unable to prove that the state official's acts were willful and wanton, the state's sovereign immunity does not extend to its employees because the state voluntarily assumed the obligation to indemnify them. *See Griess v. State of Colo.,* 841 F.2d 1042, 1046 (10th Cir.1988)(holding that the state cannot "extend its sovereign immunity to all its employees by the assumption of an illusory obligation for indemnification.").

▅ Here, the state's obligation to pay for Middleton and Travis' defense costs derives not from the nature of Hartman's claim, but from an entirely collateral, voluntary undertaking on the part of the state. Section 24–10–110(1)(a), on which Middleton and Travis rely, is only an agreement between the state and its employees and cannot be invoked as a basis for cloaking individual officers with the state's sovereign immunity. The fact that the state is required to indemnify Middleton and Travis for defense costs does not turn Hartman's claim into a claim against the state. The state's constitutional sovereign immunity cannot be manipulated in such a manner. *Id.* Accordingly, we hold that a state cannot confer a derivative constitutional sovereign immunity upon its employees by assuming an obligation to indemnify them. Therefore, Hartman's claim against Middleton and Travis in their individual capacities for willful and wanton conduct is not barred by sovereign immunity.

### III. Application of the CGIA's Notice of Claim Provisions

▅ A state enjoys sovereign immunity and thus has a right to determine the parameters of its waiver of sovereign immunity by permitting certain classes of suits while prohibiting others. *See Alden,* 527 U.S. at 758, 119 S.Ct. 2240; *Fritz v. Regents of the Univ. of Colo.,* 196 Colo. 335, 339, 586

P.2d 23, 26 (1978). Because we "abrogated the common law" of sovereign immunity in *Evans v. Board of County Commissioners,* 174 Colo. 97, 482 P.2d 968 (1971), the General Assembly must explicitly exercise the sovereign immunity Colorado enjoys. The CGIA represents Colorado's determination regarding the scope of immunity to be afforded to the state, its political subdivisions, and its employees. *See Corsentino v. Cordova,* 4 P.3d 1082, 1086 (Colo.2000). The CGIA, after initially providing immunity to Colorado public entities and employees for all claims that "lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant," § 24–10–105, then waives this immunity for certain injuries. *See* § 24–10–106. Thus, if a public entity or a public employee is entitled to sovereign immunity, a determination must then be made as to whether that immunity was waived.

In this case, the state employees do not enjoy sovereign immunity when they are sued in their individual capacities for willful and wanton conduct because the relief is sought from them personally. The issue of waiver does not arise. However, we must now determine whether the notice-of-claim provisions of the CGIA must be complied with despite the fact that state employees do not have sovereign immunity. First, we look to the notice-of-claim provisions to determine whether they are applicable to such claims. Second, because Hartman's claim involves a federal right, we must determine whether the FLSA's language or purpose warrants a finding that the FLSA preempts the CGIA's notice-of-claim provisions.

### A. The CGIA's Notice of Claim Provisions

▆ Under the CGIA, public employees are granted immunity from tort claims that arise out of an act or omission occurring during the performance of duties and within the scope of employment, unless the public employee's act or omission causing injury was "willful and wanton." § 24–10–118(2)(a). Before bringing a tort action against a public employee, the CGIA requires a claimant to provide written notification within 180 days of the discovery of the injury. §§ 24–10–

109(1), –118(1)(a). The requirements for the content of the notice and the entity to which notice must be given are specified in section 24–10–109(2) and (3). Failure to provide notice to the proper entity or person and in the proper form bars the claim. §§ 24–10–109(1), 118(1)(a); *Jefferson County Health Servs. v. Feeney,* 974 P.2d 1001, 1002, 1006 (Colo. 1998). The purposes of the notice requirement "are to allow a public entity to investigate and remedy dangerous conditions, to settle meritorious claims without incurring the expenses associated with litigation, to make necessary fiscal arrangements to cover potential liability, and to prepare the defense of claims." *Mesa Valley Sch. Dist. v. Kelsey,* 8 P.3d 1200, 1204 (Colo.2000) (citing *Feeney,* 974 P.2d at 1003; *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187, 1194 (Colo.1996)).

Hartman concedes that her FLSA retaliation claim lies in tort,[6] and that she did not provide timely notice of her claim; however, she claims that she is not required to comply with the CGIA's notice-of-claim provisions because Middleton and Travis do not have sovereign immunity. Thus, Hartman argues that the CGIA notice-of-claim provisions apply only when sovereign immunity exists. Middleton and Travis contend that the notice requirements of the CGIA must be complied with regardless of whether sovereign immunity exists. After considering the plain language of the notice-of-claim provisions and the relevant case law, we are not persuaded by Hartman's argument.

■ In interpreting the CGIA, our goal is to give effect to the intent of the General Assembly. *State v. Hartsough,* 790 P.2d 836, 838 (Colo.1990). To discern the legislative intent, we look to the statutory language itself. *Fogg v. Macaluso,* 892 P.2d 271, 274 (Colo.1995). If the language of the statute is clear and unambiguous, our task is accomplished by giving effect to the commonly accepted meaning of the words used. *Reg'l Transp. Dist. v. Voss,* 890 P.2d 663, 667 (Colo.1995).

■ We first consider the plain language of the notice-of-claim provisions. Section 24–10–109(1) provides:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, *whether or not by a willful and wanton act or omission,* shall file written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury . . . .

§ 24–10–109(1)(emphasis added). Moreover, section 24–10–118(1)(a) provides that compliance with the notice provision "shall be a jurisdictional prerequisite to any such action against a public employee, *and shall be required whether or not the injury sustained is alleged in the complaint to have occurred as the result of the willful and wanton acts of such employee.*" § 24–10–118(1)(a) (emphasis added). Thus, the plain language of the notice-of-claim provisions unambiguously requires notice in a suit against a state employee in which the plaintiff seeks to hold the state employee personally liable, as well as a suit where recovery is from the state.

Furthermore, prior to its amendment in 1992, section 24–10–109(1) provided that "[a]ny person claiming to have suffered an injury by a public entity or by an employee thereof . . . shall file written notice as provided in this section within one hundred eighty days after the date of discovery of the injury." § 24–10–109(1) (amended 1992); *Zerr v. Johnson,* No. 96–1169, 1997 WL 423115, *3, 1997 U.S App. LEXIS 19287, at *11 (10th Cir. July 29, 1997). In *Pacino v. Sanchez,* 807 P.2d 1231, 1233 (Colo.Ct.App.1990), the court of appeals held that "compliance with the provisions of § 24–10–109(1)[was] not required if the act or omission causing the alleged injury was willful and wanton." The court determined that section 24–10–118(1) (amended 1992) excuses notice where "the act or omission causing such injury was willful and wanton." *Id.* Following the decision in *Pacino,* the General Assembly amended sections 24–10–109(1) and 24–10–118(1) to require notice where an action alleging willful

---

**6.** Furthermore, in *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 116 (Colo.1992), we held that a retaliatory discharge claim is a common law tort claim. *See also Holland v. Bd. of County Comm'ns,* 883 P.2d 500, 508 (Colo.Ct.App.1994).

and wanton conduct is filed against a public entity or public employee. §§ 24–10–109(1), – 118(1); *Zerr,* 1997 WL 423115, at *3, 1997 U.S.App. LEXIS 19287, at *11.

In addition, we have recognized that application of the notice-of-claim provisions cannot turn on the existence of immunity. In *Brock v. Nyland,* 955 P.2d 1037, 1045 (Colo.1998), we held that even if a claim falls within the statutory exception so that the public entity or employee would be liable, a plaintiff's failure to provide notice barred the court from considering liability. Thus, we held that notice is required for a claim invoking one of the CGIA's enumerated exceptions to immunity. *Id.* at 1041–44 (public employee's operation of a motor vehicle owned by a public entity exception, § 24–10–106(1)(a)). Furthermore, sections 24–10–109 and 24–10–118 have been construed to require notice for claims against a public employee sued in an individual capacity. *See Yonker by and through Helstrom v. Thompson,* 939 P.2d 530, 535 (Colo.Ct.App.1997).

Thus, both the plain language of the CGIA and the case law command a conclusion that the notice-of-claim provisions apply to Hartman's FLSA retaliation claim against Middleton and Travis. Therefore, the only ground for refusing to apply the notice requirement would be if the FLSA preempts the CGIA's notice-of-claim provisions.

### B. Preemption Generally

The preemption doctrine is derived from the Supremacy Clause. The Supremacy Clause of the U.S. Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, the Supremacy Clause mandates that state law give way when it conflicts with federal law.

There are several ways that Congress can preempt state law. In *Department of Health v. The Mill,* 887 P.2d 993, 1004 (Colo.1994), *cert. denied,* 515 U.S. 1159, 115

S.Ct. 2612, 132 L.Ed.2d 855 (1995), we held that:

> Federal law preempts state law when Congress expresses a clear intent to preempt state law; when there is outright or actual conflict between federal and state law; when compliance with both federal and state law is physically impossible; when there is an implicit barrier within federal law to state regulation in a particular area; when federal legislation is so comprehensive as to occupy the entire field of regulation; or when state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

887 P.2d at 1004 (citing *Frontier Airlines, Inc. v. United Air Lines, Inc.,* 758 F.Supp. 1399, 1407 (D.Colo.1989)); *see also Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1147 (Colo.1997). Thus, when Congress does not expressly preclude state legislation, state legislation may be preempted as a result of implied preemption or conflict preemption. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). To determine if federal law implicitly preempts a state statute, a court must ascertain Congress's intent in enacting the federal statute. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

An analysis of federal preemption issues begins with "the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) (citing *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)); *see also The Mill,* 887 P.2d at 1004 (finding that preemption analysis begins with the assumption that historic state police powers should not be abrogated by federal law unless that purpose is clearly indicated in the federal statute). Thus, while Congress has the power to preempt state law, *see Louisiana Pub. Serv. Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), it is anticipated that state and federal law will peaceably coexist. *See, e.g., Hillsborough County, Florida v. Automated Med. Labs., Inc.,* 471

U.S. 707, 716, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Moreover, when Congress legislates "in a field which the [s]tates have traditionally occupied," courts will not apply preemption unless that is the "clear and manifest purpose of Congress." *Rice,* 331 U.S. at 230, 67 S.Ct. 1146.

### C. *Preemption as Applied in this Case*

As discussed above, there are six ways that Congress can preempt state law. We discuss each one in turn to determine whether the FLSA preempts the CGIA's notice-of-claim provisions. First, it is clear that Congress did not express "a clear intent to preempt state law" in enacting the FLSA. *The Mill,* 887 P.2d at 1004. The FLSA contains no statutory language that expressly forecloses the state from requiring plaintiffs to comply with the notice-of-claim provisions of the CGIA before asserting an FLSA claim. Second, because the FLSA lacks a notice provision, there is no "outright or actual conflict between federal and state law." *Id.* Third, compliance with both the CGIA notice-of-claim provisions and the FLSA "is [not] physically impossible." *Id.* There is nothing to prevent a plaintiff from complying with the requirements of both statutes before bringing suit. Fourth, there is not "an implicit barrier within the [FLSA] to state regulation." *Id.* In fact, the FLSA contains a "savings clause" that allows states and municipalities to enact stricter wage and hour laws. *See* 29 U.S.C. § 218(a). Fifth, Congress did not intend to preempt the entire field when it enacted the FLSA as evidenced by the FLSA's "savings clause." Therefore, the issue of preemption in this case turns on whether enforcement of the CGIA's notice-of-claim provisions "stands as an obstacle to the accomplishment and execution of the full objectives of Congress." *The Mill,* 887 P.2d at 1004.

Instructive on this issue is the United States Supreme Court decision in *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). In *Felder,* the plaintiff initiated a § 1983 action against the City of Milwaukee and certain of its police officers in a Wisconsin state court. *Id.* at 135, 108 S.Ct. 2302. Wisconsin law required a plaintiff suing a governmental entity or its agents to give written notice to the intended defendants within 120 days of the claimed injury. *Id.* at 136, 108 S.Ct. 2302. Failure to comply with the Wisconsin notice-of-claim requirements constituted grounds for dismissal. *Id.* The Wisconsin Supreme Court held that dismissal of the action was proper because the plaintiff failed to comply with the statute. *Id.* at 137, 108 S.Ct. 2302.

The Supreme Court reversed, holding that the Wisconsin notice-of-claim requirements were preempted as inconsistent with federal law. *Id.* at 134, 108 S.Ct. 2302. The Court explained that the enforcement of the Wisconsin statute stood as an obstacle to the accomplishment and execution of the full purposes of Congress for two reasons. First, the Court held that the Wisconsin notice-of-claim statute "conflict[ed] in both its purpose and effects with the remedial objectives of § 1983." *Id.* at 138, 108 S.Ct. 2302. The Court stated that the core purpose of § 1983 is "to provide compensatory relief for those deprived of their federal rights by state actors." *Id.* at 141, 108 S.Ct. 2302. "Section 1983 accomplishes this goal by creating a form of liability that, by its very nature, runs only against a specific class of defendants: government bodies and their officials." *Id.* The Court found that Wisconsin's notice-of-claim statute undermined this "uniquely federal remedy" by protecting "governmental defendants and thus condition[ing] the right to bring suit against the very persons and entities Congress intended to subject to liability." *Id.* at 141, 144–45, 108 S.Ct. 2302.

Second, and more importantly here, the Court held that the enforcement of the Wisconsin statute would "frequently and predictably produce different outcomes" depending on whether the plaintiff sued in federal court and, therefore, avoided the statute, or whether the plaintiff sued in state court and was thereby prevented from pursuing a claim under § 1983 because of the Wisconsin statute. The Court noted that while states may establish the rules of procedure governing litigation in their own courts, "a federal right cannot be defeated by the forms of local practice." *Id.* at 138, 108 S.Ct. 2302. Thus, although "[f]ederal law takes state courts as

it finds them," it does so "only insofar as those courts employ rules that do not 'impose unnecessary burdens upon rights of recovery authorized by federal law.' " *Id.* at 150, 108 S.Ct. 2302 (quoting *Brown v. W. Ry. of Ala.,* 338 U.S. 294, 298–99, 70 S.Ct. 105, 94 L.Ed. 100 (1949)). Because "[s]tates may not apply such an outcome-determinative law when entertaining substantive federal rights in their courts," the Court held that the Wisconsin notice-of-claim statute was preempted. *Id.* at 141, 108 S.Ct. 2302.

■ Like the Wisconsin notice-of-claim statute at issue in *Felder,* the CGIA's notice-of-claim requirement is an outcome-determinative rule. Application in cases such as this may lead to inconsistent results in state and federal courts. Thus, claims brought in federal court could proceed regardless of whether the plaintiff complies with the CGIA's notice-of-claim provisions. However, suits brought in state court would be subject to dismissal unless the plaintiff complied with the CGIA's notice-of-claim requirements. Because enforcement of the CGIA's notice-of-claim provisions in state court would result in the barring of a federal claim while the same action could proceed in federal court, the CGIA's notice-of-claim provisions "stand as an obstacle to the accomplishment and execution of the full objectives of Congress" and must yield to federal law. Thus, we conclude that the CGIA's notice-of-claim provisions are preempted by the FLSA.

Middleton and Travis argue that *Felder* is distinguishable because in finding preemption, the Court relied on the conflict between the purpose of § 1983 and the purpose of the notice-of-claim provisions. Middleton and Travis argue that such a conflict does not exist in this case. And, in fact, they argue that the CGIA's notice-of-claim provisions further the aim of the FLSA by safeguarding the working conditions of employees.

The core purpose of the FLSA is to protect all covered workers from substandard wages, oppressive working hours and detrimental labor conditions. *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)(citing 29 U.S.C. § 202(a)). Thus, we agree with Middleton and Travis that one of

the purposes behind the CGIA's notice-of-claim provisions, to allow a public entity to investigate and remedy dangerous conditions, *see Feeney,* 974 P.2d at 1003, is consistent with the FLSA's purpose of safeguarding the working conditions of employees. However, as discussed previously, the CGIA's notice-of-claim provisions serve additional purposes, which are not identical to the purposes of the FLSA.

In *Felder,* the Supreme Court noted that the Wisconsin notice-of-claim statute was "enacted *primarily* for the benefit of governmental defendants, and [was] intended to afford such defendants an opportunity to prepare a stronger case." *Felder,* 487 U.S. at 145, 108 S.Ct. 2302 (citation omitted) (emphasis in original). Here, one of the purposes of the CGIA's notice-of-claim provisions is to allow the state to prepare the defense of claims. *Mesa Valley Sch. Dist.,* 8 P.3d at 1204. In addition, the CGIA makes compliance with the notice requirements jurisdictional; consequently precluding those claims that fail to comply with the notice requirements. Thus, like the Wisconsin notice-of-claim statute at issue in *Felder,* the CGIA's notice-of-claim provisions undoubtedly benefit the state by protecting state coffers. The protection of state coffers, while not contrary to the purposes of the FLSA, does not further the purposes of the FLSA.

After weighing the above considerations, we conclude that, despite some similarity of purposes, the outcome-determinative implication in this case is sufficient to find preemption. Admittedly, the argument for preemption is stronger when the application of the state statute would lead to different results in state court than in federal court *and* the state statute also serves different purposes than the federal statute. These two considerations were both present in *Felder;* the Wisconsin notice-of-claim statute would have produced different outcomes in federal and state court and it conflicted with the purposes of § 1983. However, *Felder* recognized that a state statute that produces different outcomes depending on the forum may interfere with the purposes of Congress. The *Felder* Court stated that state statutes that "significantly inhibit the ability to bring

federal actions" and "frequently and predictably produce different outcomes" based solely upon whether pursued in state or federal court "stand as an obstacle to the accomplishment and execution of the full purposes and objective of Congress," and are thus preempted.

We agree that the CGIA's notice-of-claim provisions have some similarity of purpose with the FLSA. Nonetheless, the CGIA's notice-of-claim provisions interfere with the purposes of Congress in enacting the FLSA because they prevent injured employees from recovering under the FLSA in state court in situations such as this case. Moreover, the outcome-determinative nature of the CGIA's notice-of-claim provisions appear to be more closely related to the state's interest in protecting state funds than it is to the state's interest in investigating and remedying dangerous conditions. For theses reasons, we hold that the CGIA's notice-of-claim provisions "stand as an obstacle to the accomplishment and execution of the full objectives of Congress," and they are preempted by the FLSA.

Additionally, we find support for our holding in the decisions of other courts that have considered this issue and have held similarly. In *Heder v. City of Two Rivers,* 149 F.Supp.2d 677, 683 (E.D.Wis.2001), the court held that the plaintiff's failure to comply with the same Wisconsin notice-of-claim statute that was at issue in *Felder* did not bar the plaintiff's FLSA claim. In reaching its decision, the court stated that "state procedural rules cannot be used to defeat a federal right." *Id.* (citing *Brown,* 338 U.S. at 296, 70 S.Ct. 105). Similarly, in *Mitchell v. La Barge,* 257 A.D.2d 834, 684 N.Y.S.2d 10, 11 (1999), the court held that a municipal notice-of-claim statute was preempted by federal law and thus did not apply to plaintiffs' FLSA claim.

Based on the foregoing, we hold that a plaintiff filing an FLSA retaliation claim against a state employee in his individual capacity need not comply with the CGIA's notice-of-claim provisions.

## IV. Conclusion

Accordingly, we hold that state employees do not enjoy sovereign immunity when sued in their individual capacities for willful and wanton conduct because relief is sought from them personally. In addition, we find that the notice-of-claim provisions of the CGIA were intended to apply to such claims despite the lack of sovereign immunity. However, because we find that the FLSA preempts the CGIA's notice-of-claim provisions, we hold that the CGIA's notice-of-claim provisions do not apply to a claim against state employee in their individual capacities for retaliation under the FLSA. Therefore, we affirm the decision of the court of appeals.

Justice KOURLIS dissents and Justice COATS joins in the dissent.

Justice KOURLIS dissenting:

I do not view the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201–219 (1994), as preempting the notice-of-claim provisions in the Colorado Governmental Immunity Act (CGIA), § 24–10–109, 7 C.R.S. (2001). Therefore, I would hold that a plaintiff must comply with such notice-of-claim provisions in a claim against state employees [1] for retaliation under the FLSA, and accordingly dissent from the majority opinion.

## I.

The United States Supreme Court has now restated with undeniable clarity that a state enjoys sovereign immunity from suit in a state or federal court that can only be waived by its own choice, or abrogated by the enforcement power or other appropriate exercise of congressional power. *Alden v. Maine,* 527 U.S. 706, 754, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Hartman does not suggest that Congress abrogated the states' immunity

---

1. The question of whether individual defendants such as Charles Middleton and Leon Travis are "employers" for purposes of the FLSA is one which the court of appeals resolved in the affirmative. The parties did not seek certiorari on that issue. Rather, we took certiorari on the narrower question of whether a plaintiff suing a defendant in his individual capacity under the FLSA would be required to comply with the CGIA notice requirement.

with the passage of the FLSA, nor would such argument have merit. *See Alden,* 527 U.S. at 712, 730–32, 119 S.Ct. 2240. Therefore, the State of Colorado is immune from suit brought under the FLSA except to the extent it has waived its immunity. The CGIA is that waiver; it represents Colorado's definition of the parameters of liability that it has agreed to accept for itself, its subdivisions, and its employees.

When it promulgated the CGIA, the General Assembly set forth conditions that must be met in order to take advantage of the waiver; the notice-of-claim statute was one such condition. § 24–10–109. Therefore, a plaintiff cannot bring claims against the state or one of its employees unless he or she first files notice within 180 days of the event giving rise to the claim. *Id.* The notice is a condition precedent to the ability to sue a state employee.

Significantly, although Hartman sues the defendants in their individual capacities, she complains of conduct that occurred in the context of their employment. The structure of the statute is such that it acknowledges the broad immunity of the state, its entities, and its employees, but then limits that immunity by setting forth specific exceptions. §§ 24–10–106, –110. Tortious conduct done "willfully and wantonly" by a state employee is one of those exceptions. *Id.* Hence, fundamentally, Hartman is proceeding by permission of the CGIA. I cannot support a holding that ignores the strictures of the very statute that permits plaintiff's suit in the first place.

Such contradiction notwithstanding, I agree with the majority that if the notice-of-claim provision stands "as an obstacle to the accomplishment and execution of the full objectives of Congress," then the FLSA may preempt it. *Dep't of Health v. The Mill,* 887 P.2d 993, 1004 (Colo.1994). I further note, however, that the "exercise of federal supremacy is not to be presumed lightly." *Id.* And, "We must begin by assuming that the historic police powers of the state are not to be superseded by any federal laws or regulations unless that congressional purpose is clearly shown." *Id.* When weighed in light of these presumptions, I disagree with the conclusion that the notice-of-claim statute

"stands as an obstacle" to the goals of the FLSA, warranting the statute's preemption.

Preliminarily, I look to congressional intent in enacting the FLSA in order to determine whether such intent inferentially preempts operation of CGIA provisions. "The principal congressional purpose in enacting the [FLSA] of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.' " *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (quoting 29 U.S.C. § 202(a)). The FLSA provides that covered employees may not be required to work more than forty hours per seven-day week without overtime compensation at a rate not less than one and one-half times their regular pay. 29 U.S.C. § 207(a)(1). The FLSA also contains an "anti-retaliation provision" that prohibits employers from retaliating against covered employees for filing complaints about violations of the Act. 29 U.S.C. § 215(a)(3). The purposes of the anti-retaliation provision are: (1) "to provide an incentive for employees to report wage and hour violations by their employers"; (2) " 'to prevent fear of economic retaliation by an employer against an employee who chose to voice such a grievance' "; and (3) "to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." *Lambert v. Ackerley,* 180 F.3d 997, 1003–04 (9th Cir.1999) (quoting *EEOC v. White Son Enterps.,* 881 F.2d 1006, 1011 (11th Cir. 1989)).

I do not believe the CGIA's notice requirement thwarts in any way the general purpose of the FLSA or the specific purposes behind the anti-retaliation provision. Instead, the CGIA's notice-of-claim provisions allow a public entity to investigate and remedy dangerous conditions, *see Jefferson County Health Servs. Ass'n v. Feeney,* 974 P.2d 1001, 1003 (Colo.1998), which is fully consistent with the FLSA's purpose of safeguarding the working conditions of employees. Without the notice-of-claim provision, a state institu-

tion may not learn of the willful and wanton conduct of an employee until a full three years later. *See* 29 U.S.C. § 255(a) (1994) (setting the statute of limitations for a cause of action arising out of a willful violation of FLSA at three years). Moreover, the notice-of-claim provisions "simply address[ ] a concern that the [federal law] does not, namely the historical concern of governmental bodies that they be given reasonably prompt notice of tort claims against them." *Draper v. Chiapuzio,* 9 F.3d 1391, 1393 (9th Cir.1993). Notice affords states the opportunity to investigate the claim, and perhaps even settle, without being forced immediately into the adversarial setting of the courtroom.

The Supreme Court's holding that state notice-of-claim requirements are inconsistent with Congress's purpose in enacting 42 U.S.C. § 1983 (1994), *see Felder v. Casey,* 487 U.S. 131, 141, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), does not persuade me that the CGIA requirements are also inconsistent with the FLSA. In *Felder,* the Supreme Court stated that the core purpose of § 1983 is "to provide compensatory relief for those deprived of their federal rights by state actors." *Id.* "Section 1983 accomplishes this goal by creating a form of liability that, by its very nature, runs only against a specific class of defendants: government bodies and their officials." *Id.* "Thus, § 1983 provides 'a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and the laws of the Nation. . . .' " *Id.* at 139, 108 S.Ct. 2302 (quoting *Mitchum v. Foster,* 407 U.S. 225, 239, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)).

The FLSA imposes liability on "employers," both public and private. Thus, whereas § 1983 is directed solely at remedying governmental conduct, the FLSA is a statute of general application and does not apply only to "governmental bodies and its officials." *Id.* at 141, 108 S.Ct. 2302. In fact, it was not until 1966, twenty-eight years after the FLSA was enacted, that the statute was amended to include states and other public entities within the definition of FLSA employers. *See* Fair Labor Standards Amendments of 1966, Pub.L. No. 89–601, § 102(b), 80 Stat. 831 (extending the FLSA to certain categories of state and local employees). As the Court in *Felder* noted, § 1983 litigation

targets precisely those actors that Wisconsin's notice-of-claim statute protects. *Felder,* 487 U.S. at 144–46, 108 S.Ct. 2302. In contrast, the FLSA sweeps well beyond any specific focus on governmental employers and belies any intent to preempt the field.

Hartman further argues that the notice-of-claim provisions of the CGIA shorten the statute of limitations applicable to her FLSA retaliation claim and are thereby inconsistent with the purposes of the FLSA. To the contrary, the notice-of-claim provisions set forth in sections 24–10–109, –118(1)(a), 7 C.R.S. (2001), are not limitations on actions, but conditions precedent to the assertion of a claim against a public entity or public employee. *Felder,* 487 U.S. at 144, 108 S.Ct. 2302; *King v. United States,* 53 F.Supp.2d 1056, 1081 (D.Colo.1999) (citing *City & County of Denver v. Desert Truck Sales, Inc.,* 837 P.2d 759, 763 (Colo.1992)). Thus, once notice is filed, the plaintiff retains the full benefit of the applicable limitations period. Furthermore, the CGIA recognizes that notice and statute of limitations are two distinct issues and, in fact, section 24–10–109(5) sets forth the explicit requirement that claimants against public entities and public employees must also comply with the applicable statute of limitations.

I recognize the possibility that federal courts may reach a different result on this issue and also recognize that there are cases supporting preemption, *see, e.g., Heder v. City of Two Rivers,* 149 F.Supp.2d 677 (E.D.Wis.2001); *Kilvitis v. County of Luzerne,* 52 F.Supp.2d 403 (M.D.Penn.1999). I would nonetheless conclude as a state court, absent a clear conflict between the CGIA and the FLSA or preemptive direction from Congress, we must give full effect to the CGIA.

Moreover, it merits noting that it was Hartman who sought the State of Colorado's courts as the forum in which to bring this suit. It seems incongruous that having once chosen the forum, plaintiff now asserts that the rules of that forum operate to her disadvantage.

Accordingly, in my view, the considerations weigh in favor of asserting the law of Colorado against a finding of preemption. I would hold that the CGIA's notice-of-claim provisions govern this proceeding.

## II.

Because I would hold that Hartman was required to provide notice of her FLSA retaliation claim, I next address her argument under *Alden,* that this requirement did not exist at the time she filed her complaint and should not be applied retrospectively to bar her claim. I also believe this argument is without merit.

I rest my conclusion in this case not on *Alden,* but on substantive preemption analysis, i.e., the notice-of-claim statute does not thwart the goals of the FLSA. *See Felder,* 487 U.S. at 139–41, 108 S.Ct. 2302. The fact that the question of whether the FLSA preempts the CGIA's notice-of-claim provisions is one of first impression in Colorado, in no way leads to the conclusion that any holding should not be applied in this case.

Hence, I would hold that a plaintiff filing a FLSA retaliation claim against a state employee in his individual capacity must comply with the CGIA's notice-of-claim provisions, and therefore respectfully dissent from the majority opinion.

I am authorized to state that Justice COATS joins in this dissent.

