**CONSUMER CRUSADE, INC.,
a Colorado corporation,
Plaintiff–Appellant,**

v.

**AFFORDABLE HEALTH CARE SOLU-
TIONS, INC., a California corpora-
tion, Defendant–Appellee.**

No. 04CA1839.

Colorado Court of Appeals,
Div. II.

Aug. 25, 2005.

Demirali Law Firm, P.C., A.M. Demirali, Denver, Colorado, for Plaintiff–Appellant.

Richilano & Ridley, P.C., Patrick L. Ridley, Robert T. Fishman, Denver, Colorado, for Defendant–Appellee.

WEBB, J.

Plaintiff, Consumer Crusade, Inc. (Consumer), appeals the judgment dismissing its complaint against defendant, Affordable Health Care Solutions, Inc. (Affordable), for lack of subject matter jurisdiction. We reverse and remand for further proceedings.

Consumer's complaint alleged that Affordable had sent out unsolicited advertisements via facsimile (fax) to persons in the State of Colorado in violation of 47 U.S.C. § 227, the Telephone Consumer Protection Act (TCPA). Based on assignments of recipients' claims, Consumer sought damages, costs, and an injunction against Affordable.

Affordable moved to dismiss the complaint under C.R.C.P. 12(b)(1) and 12(b)(5) asserting, as here relevant, that the trial court lacked subject matter jurisdiction to hear a private claim under the TCPA. According to Affordable, because the General Assembly had enacted a statute regulating unsolicited fax advertising after the adoption of the TCPA, see Colo. Sess. Laws 1997, ch. 133, § 6–1–105 at 500, which was less restrictive than the federal act, this statute deprived the Colorado courts of jurisdiction to entertain private actions under the TCPA.

The trial court concluded that, until the state statute was amended in 2004 to make specific reference to the TCPA, see § 6–1–702(1)(c), C.R.S.2004, Colorado courts had lacked jurisdiction to hear such private actions. Because Affordable sent the faxes at issue in 2003, the court dismissed Consumer's complaint.

## I.

■ The parties agree that the TCPA is ambiguous, but dispute how it should be interpreted as to private actions. We conclude state courts have jurisdiction over such actions under the Supremacy Clause, U.S. Const., art. VI, cl. 2, and the TCPA does not limit this jurisdiction, even assuming that Congress could do so.

■ When presented with a dismissal for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), we review the trial court's factual determinations under a clear error standard and its legal conclusions under a de novo standard. *Egle v. City & County of Denver,* 93 P.3d 609 (Colo.App.2004); *Bazemore v. Colo. State Lottery Div.,* 64 P.3d 876 (Colo.App.2002). Here, the case turns on statutory interpretation, which we review de novo. *Vigil v. Franklin,* 103 P.3d 322 (Colo. 2004).

■ When interpreting a statute, we first look to its language, which we construe as written if that language is clear and unambiguous. However, if the language is ambiguous, we may rely on legislative history to discern the legislature's intent. *City of Aurora v. Bd. of County Comm'rs,* 919 P.2d 198 (Colo.1996). We must construe statutory

provisions in their entirety and give effect to every word contained therein. *Bd. of County Comm'rs v. Vail Assocs., Inc.,* 19 P.3d 1263 (Colo.2001).

The TCPA states: "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States ... to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C).

The statute creates at least a conditional private right of action for violation of its provisions:

> A person or entity may, *if otherwise permitted by the laws or rules of court of a State,* bring in an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 277(b)(3) (emphasis supplied).

■ In addition to a private action, the TCPA may be enforced through an action brought by any state attorney general in federal court. *Murphey v. Lanier,* 204 F.3d 911 (9th Cir.2000). However, courts have concluded that the TCPA cannot be enforced by private action in federal court. *See, e.g., Murphey v. Lanier, supra; Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Servs., Ltd.,* 156 F.3d 432 (2d Cir. 1998).

The TCPA also provides: "[N]othing in this section or in the regulations prescribed under this section shall preempt any State law that imposes *more restrictive intrastate requirements or regulations* on, or which prohibits ... the use of, telephone facsimile machines or other electronic devices to send unsolicited advertisements." 47 U.S.C. § 227(e)(1)(A) (emphasis supplied).

We agree with the parties that the phrase concerning private actions, "if otherwise permitted by the laws or rules of court of a State," is ambiguous. Only one court has found this phrase to be clear, albeit without explanation. *Autoflex Leasing, Inc. v. Mfrs. Auto Leasing, Inc.*, 16 S.W.3d 815, 817 (Tex. App.2000). Other courts have ascribed one of three different and inconsistent interpretations to this phrase.

## II.

We examine each of those interpretations in light of the Supremacy Clause, which provides: "This constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every state shall be bound thereby; anything in the constitution or laws of any state to the contrary notwithstanding."

■ The Supremacy Clause requires that state law yield when it conflicts with federal law. *Middleton v. Hartman*, 45 P.3d 721, 731 (Colo.2002). Moreover, it "charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure," *Howlett v. Rose*, 496 U.S. 356, 367, 110 S.Ct. 2430, 2438, 110 L.Ed.2d 332 (1990), unless Congress dictates otherwise. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

■ However, federal law must take state courts "as it finds them," because the states "have great latitude to establish the structure and jurisdiction of their own courts." *Howlett v. Rose, supra*, 496 U.S. at 372, 110 S.Ct. at 2441. Thus, a state may decline to exercise jurisdiction over a federal claim by applying a neutral rule of judicial administration. *Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947).

## A.

In *Autoflex Leasing, Inc. v. Manufacturers Auto Leasing, Inc., supra*, the court interpreted the "if otherwise permitted" phrase as an "opt in" provision. This interpretation assumes that Congress intended to deprive state courts of jurisdiction over private TCPA actions, unless and until the state takes affirmative steps, either by legislation or court rule, to exercise jurisdiction over such actions. Applying this view, until the Colorado statute was amended in 2004, no private action under the TCPA could be prosecuted in the Colorado courts.

However, no other court has adopted this interpretation, and *Autoflex* has been criticized as misconstruing the federal cases on which it relied. *See Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Communications, L.P.*, 329 F.Supp.2d 789 (M.D.La. 2004). This interpretation "would most likely run afoul of the Tenth Amendment," because it mandates state legislation. *Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Communications, L.P., supra*, 329 F.Supp.2d at 796.

The legislative history indicates that the TCPA was enacted because several states had adopted legislation regulating unsolicited faxes, but effective enforcement of such regulations was hindered by the fax senders' use of interstate communications, jurisdiction over which is vested in Congress. By adopting federal legislation, Congress intended to close this loophole.

Given this purpose, we doubt that Congress would require the states to adopt additional laws or rules of court to enable claims under the TCPA to be enforced in their courts. *See Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365, 380 (Tex.App.2004)(*review granted* Mar. 11, 2005)(there is no reason to conclude that Congress structured the TCPA in such an inefficient manner as to require states to enact legislation to allow their courts to hear those claims).

■ Moreover, state courts of general jurisdiction are presumed to have jurisdiction over federal claims. *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). This presumption can only be rebutted "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobil Oil Corp.*,

453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981).

We discern nothing in the ambiguous language of the TCPA or its legislative history that would satisfy either the first or second prongs of this test. Moreover, the legislative history shows Congressional intent to facilitate state regulation of unsolicited fax advertisements, which negates the third prong. Hence, we discern no basis for inferring a condition of prior state approval, and therefore we reject the opt in interpretation.

### B.

The majority of courts have also rejected this interpretation and concluded that the phrase in question establishes an "opt out" process. Under this interpretation, the phrase authorizes a state to refuse to entertain private TCPA actions, but only by affirmative legislation or court rule doing so. These courts have recognized that, unless a state affirmatively opts out of private enforcement actions, the Supremacy Clause would require state courts to enforce the TCPA. *See, e.g., Mulhern v. MacLeod*, 441 Mass. 754, 808 N.E.2d 778 (2004); *Reynolds v. Diamond Foods & Poultry, Inc.*, 79 S.W.3d 907 (Mo.2002); *Zelma v. Total Remodeling, Inc.*, 334 N.J.Super. 140, 756 A.2d 1091 (Law Div.2000); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc., supra; see also Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Servs., Ltd., supra; Int'l Sci. & Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146 (4th Cir.1997); *Worsham v. Nationwide Ins. Co.*, 138 Md.App. 487, 772 A.2d 868 (Spec.App.2001).

We reject the opt out interpretation based on the legislative history of the TCPA. This interpretation would lead to the anomalous conclusion that Congress created a cause of action to assist state regulation of unsolicited faxes, precluded its assertion in federal court, and provided no federal administrative forum, but nevertheless authorized any state to deprive its citizens of a forum for the cause of action by opting out.

This interpretation also "might well present serious constitutional problems under the Supremacy Clause of the United States Constitution," *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 382 Md. 689, 857 A.2d 1, 18 (2004), by allowing states to close their courts to federal claims for which Congress provided no federal forum. *See Testa v. Katt, supra*. Early cases adopting the opt in interpretation, such as *Foxhall Realty Law Offices, supra*, did not address this constitutional issue.

### C.

In contrast to either of these interpretations, a few courts have interpreted the "if otherwise permitted" phrase as merely an acknowledgement by Congress "that states have the right to structure their own court systems and that state courts are not obligated to change their procedural rules to accommodate TCPA claims." *Schulman v. Chase Manhattan Bank*, 268 A.D.2d 174, 710 N.Y.S.2d 368, 372 (2000); *accord Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Communications, L.P., supra; Condon v. Office Depot, Inc.*, 855 So.2d 644 (Fla.Dist.Ct. App.2003); *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc., supra*. Under this view, no state can refuse to entertain a private TCPA action, but a state is not compelled to adopt special procedural rules for such actions.

We agree with the acknowledgment interpretation of the TCPA for the following reasons.

First, we find persuasive the analysis of the legislative history set forth in *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc., supra*. That court emphasized the following comments of Senator Hollings, the sponsor of the TCPA:

The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine.

*Ponte, supra*, 857 A.2d at 13 (quoting 137 Cong. Rec. 30821). The senator went on to express his hope that states would facilitate

consumer claims by allowing them to be brought in small claims court, without an attorney, because legal fees might exceed potential damages.

Noting that these comments "contain essentially the whole legislative history" of the phrase, the *Ponte* court concluded that the phrase merely reflected established constitutional principles under which states could not be required to adopt court procedures necessary to accommodate claims under federal statutes. *Ponte, supra,* 857 A.2d at 14. The court further concluded that, while the TCPA left "proper venue" to the determination of state legislators, "[t]he substantive issue of whether the federal cause of action should be entertained in the appropriate state court was *not* a matter left to state legislators." *Ponte, supra,* 857 A.2d at 14; *see also Schulman v. Chase Manhattan Bank, supra.*

Second, the language, "if otherwise permitted by the laws or rules of court," suggests a focus on general jurisdictional and venue principles, rather than a specific legislative decision to opt out of the TCPA. While a specific decision to opt out could occur by legislative enactment, we consider it highly unlikely that a state would, by "rules of court," opt out of a particular federal statute.

■ Third, while interpretation of this phrase has now been addressed for almost a decade, the earlier cases, on which many later cases have relied, did not recognize the acknowledgment interpretation as a means of avoiding the constitutional problems discussed above with both the opt in and opt out interpretations. *See Int'l Sci. & Tech. Inst., Inc. v. Inacom Communications, Inc., supra; Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Servs., Ltd., supra.* An interpretation that avoids a constitutional question is favored. *See Clark v. Martinez,* 543 U.S. 371, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005).

We are not persuaded by Affordable's argument that the acknowledgement interpretation should be rejected because it makes the phrase superfluous. *See Chair King,*

*Inc. v. GTE Mobilnet of Houston, Inc., supra.* The phrase refers to "laws," which implicate jurisdiction, and "rules of court," which implicate procedure, both of which are consistent with Senator Hollings's stated desire that states would make enforcement of these claims easy for consumers. *See Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Communications, L.P., supra,* 329 F.Supp.2d at 802 (TCPA "leaves to the states the procedural and jurisdictional questions surrounding each state's enforcement of private rights of action").

In rejecting a similar argument, the *Ponte* court, 857 A.2d at 15, explained that "legislative bodies often refer to the pertinent constitutional principles underlying legislation even though such references may not, strictly, be required." The court cited other federal statutes containing general references concerning the Commerce Clause. *See, e.g.,* 18 U.S.C. § 247(b); 42 U.S.C. § 2000a(c).

■ Accordingly, we conclude that when Congress created a private right of action that could be prosecuted in state courts, "if otherwise permitted by the laws or rules of court of a State," it was acknowledging that the states could apply their own rules of procedure to such an action, but it did not intend to require that any state adopt a further law or rule of court to allow the prosecution of such actions in its courts. Hence, the Supremacy Clause requires the exercise of such jurisdiction as the state courts possess.

In light of this conclusion, we need not consider whether Colorado had taken affirmative steps to prohibit the district courts from considering private claims under the TCPA at the times Affordable sent the faxes in issue.

The judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge ROTHENBERG concurs.

Judge CRISWELL * specially concurs.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2004.

Judge CRISWELL specially concurring.

I fully agree with the majority that the courts of this state have jurisdiction to adjudicate private claims under the Telephone Consumer Protection Act (TCPA). I write separately, however, because I am convinced that, whether the "acknowledgment" or the "opt out" interpretation of the pertinent proviso of the federal act is adopted, the result would be the same. Hence, I see no need to accept as gospel the validity of either approach.

I should first note that, like the majority, I reject the notion that, by adopting the proviso, Congress intended that no state court would have jurisdiction over TCPA private claims, unless the state took affirmative action to vest its courts with the requisite jurisdiction. This "opt in" interpretation adopted by *Autoflex Leasing, Inc. v. Manufacturers Auto Leasing, Inc.*, 16 S.W.3d 815 (Tex.App.2000), has been unanimously rejected, even in a later opinion by a division of the same court. *See Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365 (Tex.App.2004) (*review granted* Mar. 11, 2005) (adopting opt out interpretation).

However, once this interpretation is rejected, it becomes, in my opinion, irrelevant whether the acknowledgment or the opt out view of the meaning of the proviso is adopted; even if the opt out interpretation is considered the correct one, the courts of this state would still have jurisdiction to entertain private claims under the TCPA, because the Colorado General Assembly has taken no steps to limit the courts' jurisdiction.

The jurisdiction of the district courts in this state is established by the Colorado Constitution. Colo. Const. art. VI, § 9(1), provides: "The district courts shall be trial courts of record with general jurisdiction, and *shall* have original jurisdiction in *all civil*, probate, and criminal cases, except as otherwise provided *herein*, and shall have such appellate jurisdiction as may be prescribed *by law* " (emphasis supplied).

This provision grants jurisdiction that "is unlimited, both geographically and substantively." *People v. Higa*, 735 P.2d 203, 205 (Colo.App.1987). Hence, even if the General Assembly has not authorized the exercise of a particular judicial function, this constitutional provision empowers the courts to act. *In re A.W.*, 637 P.2d 366 (Colo.1981)(even without statutory authorization, district court has jurisdiction respecting mental incompetent).

The authority of the General Assembly to limit the *geographical* jurisdiction of any specific district court, without affecting the overall jurisdiction of the district courts collectively, has been recognized. *State v. Borquez*, 751 P.2d 639 (Colo.1988)(statute limiting appeal of automobile license revocation order to district court of county of driver's residence); *see People v. Higa, supra* (statute did not limit court's authority to conduct closing arguments and jury deliberations outside county seat).

Likewise, the General Assembly may limit the district court's jurisdiction by granting jurisdiction to another court that the constitution authorized it to create. *People ex rel. Cruz v. Morley*, 77 Colo. 25, 234 P. 178 (1924).

Whether that legislative body may restrict or limit the broad *substantive* jurisdiction over "all civil ... cases" granted by the constitution to the district courts by preventing all of them from passing upon otherwise cognizable civil claims has yet to be decided. However, even if it is assumed that the General Assembly possesses such authority, it may limit the courts' jurisdiction only by the use of plain, clear, and explicit language. *See State v. Borquez, supra; People v. Higa, supra.*

We must, therefore, apply this standard of explicitness in considering whether the General Assembly intended to deprive all Colorado district courts of jurisdiction to hear private claims under the TCPA.

The TCPA was enacted in 1991, and in 1997 the Colorado General Assembly first enacted legislation dealing with unsolicited fax transmissions. Colo. Sess. Laws 1997, ch. 133, § 6–1–105(1)(I) at 500, provided:

A person engages in a deceptive trade practice when, in the course of such person's business ... such person solicits a consumer residing in Colorado by a facsim-

ile transmission without including in the facsimile message a toll-free telephone number which a recipient of the unsolicited transmission may use to notify the sender not to transmit to the recipient any further unsolicited transmission.

In 1999, this statute was amended in a manner not relevant here, Colo. Sess. Laws 1999, ch. 188, § 6–1–702(1)(b)(I) at 642. In 2004, however, the General Assembly expressly referred to the TCPA by providing: "A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person ... [v]iolates 47 U.S.C. sec. 227 [the TCPA] or any rule promulgated thereunder." Section 6–1–702(1)(c), C.R.S.2004.

The trial court recognized that, by enacting the 2004 statute, the General Assembly expressly authorized the prosecution of private TCPA claims in the Colorado courts. However, the initial Colorado statute was adopted after the passage of the TCPA, and it contained provisions less restrictive than the federal act: unsolicited faxes could be sent, so long as a toll-free number was included in the fax allowing the recipient to prohibit further transmissions. For these reasons, the trial court concluded that the effect of this initial 1997 act was to deprive all district courts of jurisdiction over private TCPA claims. I disagree with this conclusion.

First, while Congressional authority over interstate commerce deprives the states of the authority to enact *any* inconsistent legislation, *Middleton v. Hartman*, 45 P.3d 721, 731 (Colo.2002), Congress authorized the states to adopt legislation containing "*more restrictive intrastate* requirements or regulations" than contained in the TCPA. 47 U.S.C. § 227(e)(1)(A). Yet, nothing in the TCPA purports to authorize the states to adopt *less restrictive* regulations governing *interstate* commerce. Therefore, the original state statute was, at best, applicable only to purely intrastate transmissions. Even after the adoption of the state statute, the substantive provisions of the TCPA continued to regulate all interstate transmissions, and the Colorado Attorney General could enforce the TCPA's prohibitions through legal action in the feder-

al courts. 47 U.S.C. § 227(f)(1); *Murphey v. Lanier*, 204 F.3d 911 (9th Cir.2000). Hence, the only possible effect that the initial statute could have had upon interstate transmissions relates to the proper forum for the prosecution of a private claim for violation of the TCPA.

Second, the 1997 statute contained no provisions whatsoever expressly addressing this question or referring to the TCPA. The only basis for asserting that this original statute restricted the remedies available to Colorado residents under the TCPA is the substantive difference between its regulations and those of the TCPA. Yet, it is just as logical, if not more so, to conclude that the General Assembly intended only to regulate intrastate transmissions differently from interstate transmissions than to assume that this regulatory difference was also intended to restrict the jurisdiction of the Colorado courts under the federal act. Indeed, other courts have recognized that a mere substantive difference between the TCPA and a state statute does not operate as an opt out election. *See, e.g., R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 382 Md. 689, 857 A.2d 1 (2004); *Mulhern v. MacLeod*, 441 Mass. 754, 808 N.E.2d 778 (2004); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc., supra.*

Finally, even if it is assumed that the General Assembly has the authority to limit the substantive jurisdiction granted by the Colorado Constitution to the district courts, any intent to do so must be plain and explicit. *State v. Borquez, supra; People v. Higa, supra.* The initial statute here did not, by any means, express any such plain or explicit intent. This statute cannot, therefore, be interpreted as depriving the Colorado district courts of their constitutional jurisdiction to entertain private claims for alleged violations of the TCPA.

I conclude, therefore, that the issue whether the "if otherwise permitted" proviso in the TCPA was merely an acknowledgment that the states need not adopt special procedural rules for private TCPA actions or allowed states to opt out of state court enforcement of the TCPA through private actions need not be resolved in this case. In either event, the Colorado General Assembly has never

elected to opt out of these enforcement proceedings, and the Colorado courts have always possessed jurisdiction to adjudicate such private claims.