Footnotes in HTML versions of opinions are designated by boxes (click on the
box the footnote text) and are not numbered. For an exact copy of the opinion,
retrieve the Adobe PDF version.


IN THE SUPREME COURT OF TEXAS

════════════
No. 04-0570
════════════

The Chair King, Inc., Chair King, S.A., Inc., Jerome Kosoy, M.D., M.E.
Ford and Associates, Beautique, Inc., Discovery Services of Texas, Inc.,
Vantage Shoe Warehouse, Inc., Counselor Systems, Inc., Pope and
Booth, P.C., Jeffrey K. Musker, D.C., and Pope Escrow Company,
Petitioners,

v.

GTE Mobilnet of Houston, Inc., And Chick-Fil-A, Inc., Respondents

════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas
════════════════════════════════════════════════════


Argued on April 14, 2005

 
            Justice O’Neill delivered the opinion of the Court.
 
            Justice Wainwright did not participate in the decision.

            The suit underlying this appeal complains of unsolicited faxes sent in violation of the federal
Telephone Consumer Protection Act, 47 U.S.C. § 227 (“TCPA”), which grants those who receive
illegal faxes a private cause of action in state court “if otherwise permitted by the laws or rules of
court of a State.” 47 U.S.C. § 227(b)(3). Texas did not expressly permit a private right of action for
unsolicited faxes until September 1, 1999, when the Legislature amended the Business and
Commerce Code to allow parties to bring suit in state court for TCPA violations. Act of May 26,
1999, 76th Leg., R.S., ch. 635, § 1, 1999 Tex. Gen. Laws 3203 (current version at Tex. Bus. & Com.
Code § 35.47(f)). We must decide whether the faxes at issue in this case, which were sent before
September 1, 1999, are actionable in Texas state courts under the TCPA. We conclude that they are
not, and reverse and render judgment against the recipients. I. Background
            Beginning in 1992, The Chair King, Inc., and others


 (collectively “plaintiffs” or “recipients”)
complain that they began to receive illegal faxes from various companies advertising their products. 
They originally filed suit in federal court, but the court dismissed the case for lack of subject-matter
jurisdiction.


 Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507, 509 (5th Cir. 1997). The
plaintiffs then filed this suit in state court against a number of defendants


 alleging a private damage
claim under the TCPA, negligence, negligence per se, invasion of privacy, trespass to chattels, gross
negligence, and conspiracy among the senders. The trial court granted the defendants’ joint and
individual summary-judgment motions and denied the plaintiffs’ motion for partial summary
judgment. The plaintiffs settled with various defendants during the course of the proceedings,
leaving only GTE Mobilnet of Houston, Inc. (“GTE Mobilnet”) and Chick-Fil-A, Inc. (“Chick-Fil-A”) as defendants before the court of appeals.
            The court of appeals affirmed the trial court’s judgment in part, and reversed and remanded
in part. 135 S.W.3d 365. Specifically, the court affirmed the trial court’s summary judgment on all
of the common-law claims, on all claims against Chick-Fil-A after applying Texas’ two-year statute
of limitations, and on certain plaintiffs’ TCPA claims against GTE Mobilnet that the court
considered barred by limitations. Id. at 396-97. The court reversed the trial court’s judgment as to
the remaining plaintiffs’ TCPA claims against GTE Mobilnet,


 which were remanded for further
proceedings. Id.
            Both sides petitioned this Court for review, the plaintiffs challenging the court of appeals’
determination of the limitations issue and the defendants contending, inter alia, that there was no
TCPA private right of action cognizable in Texas courts until the Legislature enacted enabling
legislation in 1999. Alternatively, defendants claim they cannot be liable for faxes transmitted by
independent advertising companies acting at the behest of independent retailers. We granted the
parties’ petitions for review to consider the TCPA’s application and related issues. II. The Telephone Consumer Protection Act
A. History
            Congress enacted the Telephone Consumer Protection Act in 1991 by amending the
Communications Act of 1934. Pub. L. No. 102-243, 105 Stat. 2394, (codified as amended at 47 
U.S.C. § 227). The TCPA’s purposes were to “protect the privacy interests of residential telephone
subscribers by placing restrictions on unsolicited, automated telephone calls . . . and to facilitate
interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers.” 
S. Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N.1968, 1968. The legislation was
intended to address a growing number of consumer complaints related to the use of automated
telephone equipment to make unsolicited telephone calls and faxes. That growth was spurred by a
dramatic decrease in the cost of long-distance service, which in turn reduced the expenses associated
with telemarketing. Id. at 2, reprinted in 1991 U.S.C.C.A.N. 1968, 1969-70.
            Before the TCPA’s enactment, many states had promulgated regulations aimed at limiting
unsolicited intrastate telemarketing, but constitutional constraints prevented them from reaching
interstate communications. Id. at 3, reprinted in 1991 U.S.C.C.A.N. 1968, 1970 (noting “States do
not have jurisdiction over interstate calls. Many States have expressed a desire for Federal
legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate
calls.”). By the time the TCPA became law, over forty states had legislatively limited the use of
automatic-dialer recorded-message players or otherwise restricted telemarketing.


 Id., reprinted in
1991 U.S.C.C.A.N. 1968, 1970. But given that state regulation reached only intrastate
communications, consumer complaints to the Federal Communications Commission (FCC) soared. 
Id., reprinted in 1991 U.S.C.C.A.N. 1968, 1970. The TCPA quickly followed.
 
B. Statutory Framework 
            The TCPA presents what has been described as “an unusual constellation of statutory
features.” Chair King, 131 F.3d at 512. On one hand, the Act creates a federal private right of
action, but on the other it confers exclusive jurisdiction on state courts to entertain it. Id. The TCPA
does contain an exclusive federal enforcement component, authorizing state attorneys general to
bring civil actions in federal court on behalf of their state’s residents to obtain injunctive relief
against unauthorized telephone calls and facsimiles and to recover monetary damages. 47 U.S.C.
§ 227 (f)(1)-(2). For such actions the TCPA authorizes the FCC to intervene as of right, to be heard
in all such matters, and to file petitions for appeal. 47 U.S.C. § 227(f)(3). But for purposes of
private enforcement and redress, state-court jurisdiction is exclusive. 
            Under the TCPA, it is illegal to “use any telephone facsimile machine, computer or other
device to send an unsolicited advertisement to a telephone facsimile machine.” 47 U.S.C. §
227(b)(1)(c). Section 227(b)(3) creates a private right of action for recipients of unsolicited faxes
to obtain monetary and injunctive relief, as follows: 
Private Right of Action. A person or entity may, if otherwise permitted by the laws
or rules of court of a State, bring in an appropriate court of that State — 
 
            (A)      an action based on a violation of this subsection or the regulations
prescribed under this subsection to enjoin such violation, 
 
            (B)      an action to recover for actual monetary loss from such a violation, or
to receive $500 in damages for each such violation, whichever is
greater, or 
 
            (C)      both such actions.

Id. § 227(b)(3) (emphasis added). It is the import of the statutory proviso—“if otherwise permitted
by the laws or rules of court of a State”—that the parties dispute and that courts have struggled to
interpret.
            The defendants claim the right of action that the TCPA affords is not self-implementing; that
is, the private cause of action the Act creates is not immediately enforceable in Texas courts without state enabling legislation. For the plaintiffs to bring such a claim, defendants contend, Texas laws
or rules of court must “otherwise permit” it, and Texas did not until September 1, 1999, when the
Legislature amended the Texas Business and Commerce Code to permit private TCPA claims.


 Act
of May 26, 1999, 76th Leg., R.S., ch. 635, § 1, 1999 Tex. Gen. Laws 3203, 3203 (codified as
amended at Tex. Bus. & Com. Code § 35.47(f)). Defendants’ argument mirrors what has sometimes
been referred to as the “opt-in” approach to the TCPA, in effect requiring some type of affirmative
state buy-in before the federally-created private right of action is cognizable in state court. 
            The plaintiffs take a contrary view. Because the TCPA is federal law, they claim, state courts
of general jurisdiction are inherently empowered, and indeed required, to enforce it. See Tafflin v.
Levitt, 493 U.S. 455, 459-61 (1990). According to plaintiffs, the TCPA created an immediately
actionable private right of action in state court and there was no need for state enabling legislation. 
To support their position, plaintiffs posit two interpretations of the TCPA commonly known as
“acknowledgment” and “opt-out.” 
            For reasons that we will explain, we believe the TCPA’s plain language, purpose, and
historical context favor the “opt-in” interpretation. We begin by examining all three interpretive
approaches and the reasoning behind them. C. Interpreting the Statutory Proviso 
1. The “Acknowledgment” Approach 
            The “acknowledgment” position that some courts have adopted interprets the Supremacy
Clause of the United States Constitution to require states to provide a forum for private TCPA
damage claims with no ability to decline. See R.A. Ponte Architects, Ltd. v. Investors’ Alert, Inc.,
857 A.2d 1 (Md. 2004); Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc., 2005
Colo. App. LEXIS 1354 (Colo Ct. App. Aug. 25, 2005); U.S. Const. art. VI, cl. 2 (“This
Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the
Judges in every State shall be bound thereby . . . .”). The focal point of the “acknowledgment”
approach is the general rule that a state may not decline to enforce a federal cause of action: 
[T]he Constitution and laws passed pursuant to it are as much laws in the State as laws
passed by the state legislature. The Supremacy Clause makes those laws “the supreme
Law of the Land,” and charges state courts with a coordinate responsibility to enforce
that law according to their regular modes of procedure.
Howlett v. Rose, 496 U.S. 356, 367 (1990). According to this view, no state enabling legislation is
necessary for parties to assert private TCPA causes of action, and states may not decline to entertain
them. The presumption of state-court jurisdiction over federal causes of action can be rebutted only
“by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear
incompatibility between state-court jurisdiction and federal interests,” Gulf Offshore Co. v. Mobil
Oil Corp., 453 U.S. 473, 478 (1981), and courts espousing the acknowledgment view have found
nothing in the TCPA’s language or legislative history to rebut the presumption. See, e.g., Consumer
Crusade, 2005 Colo. App. LEXIS 1354, at *9. 
            It is, of course, generally true that states may not decline to recognize or enforce federal law. 
Howlett, 496 U.S. at 371. But the federal law that states are required to enforce must be applied
according to its terms. Had the TCPA simply provided that “[a] person or entity may . . . bring . .
. an action based on a [TCPA] violation,” the states’ constitutional obligation under the Supremacy
Clause to entertain such claims would be irrefutable. But Congress chose to qualify the private
TCPA right of action it created by including the proviso “if otherwise permitted by the laws or rules
of court of a State.” 47 U.S.C. § 227(b)(3). Failure to give effect to the statutory proviso would
itself run the risk of violating the Supremacy Clause by refusing to apply the federal right as written. 
            Under the “acknowledgment” interpretation, the TCPA’s “if otherwise permitted” language
merely acknowledges states’ rights to structure their court systems and apply neutral state-court
procedures to federal causes of action. See, e.g., Consumer Crusade, 2005 Colo. App. LEXIS 1354,
at *10 (stating “no state can refuse to entertain a private TCPA action, but a state is not compelled
to adopt special procedural rules for such actions”). Courts adopting this interpretation have relied
heavily on a speech by the TCPA’s author, Senator Ernest Hollings of South Carolina, when he
introduced the substitute bill containing the private right of action eventually codified at 47 U.S.C.
§ 227(b)(3): 
The substitute bill contains a private right-of-action provision that will make it easier
for consumers to recover damages from receiving these computerized calls. The
provision would allow consumers to bring an action in State court against any entity
that violates the bill. The bill does not, because of constitutional constraints, dictate
to the States which court in each State shall be the proper venue for such an action,
as this is a matter for State legislators to determine. Nevertheless, it is my hope that
States will make it as easy as possible for consumers to bring such actions, preferably
in small claims court. The consumer outrage at receiving these calls is clear. Unless
Congress makes it easier for consumers to obtain damages from those who violate this
bill, these abuses will undoubtedly continue. 
 
Small claims court or a similar court would allow the consumer to appear before the
court without an attorney. The amount of damages in this legislation is set to be fair
to both the consumer and the telemarketer. However, it would defeat the purposes of
the bill if the attorneys’ costs to consumers of bringing an action were greater than the
potential damages. I thus expect that the States will act reasonably in permitting their
citizens to go to court to enforce this bill.

137 Cong. Rec. 30821-22 (1991) (statement of Sen. Hollings). Senator Hollings’s speech on the
day the substitute bill was introduced is the only available legislative history concerning the private-right-of-action provision. 
            We do not find the argument that Senator Hollings’s speech compels an “acknowledgment”
interpretation persuasive. While the statement may have accurately reflected Senator Hollings’s
understanding of the private right of action, there can be no certainty that it reflected the view of the
entire Congress. See Gen. Chem. Corp. v. De La Lastra, 852 S.W.2d 916, 923 (Tex. 1993) (“[T]he
intent of an individual legislator, even a statute’s principal author, is not legislative history
controlling the construction to be given a statute.”). And even if we were to presume that Senator
Hollings’s speech accurately captured congressional intent, it can just as fairly be read to support an
“opt-in” approach. By stating his expectation that “the States will act reasonably in permitting their
citizens to go to court to enforce this bill,” Senator Hollings implies that states must act in an
affirmative manner before the TCPA private damage claim is cognizable in state court. In sum, we
believe that Senator Hollings’s remarks are of limited interpretive value. 
            The “acknowledgment” approach to interpreting the TCPA’s “if otherwise permitted” proviso
presents a number of problems. For one, it renders certain language in the TCPA “doubly
redundant.” Chair King, 135 S.W.3d at 381. State district courts of general jurisdiction are
presumed to have adjudicative power over federal statutory private damage claims unless Congress
specifically decides otherwise, so there would be no reason for Congress to import that general
principle into the statutory proviso when it does not do so in other federal statutes. See id. 
Nevertheless, Congress did choose to acknowledge this general principle elsewhere in the TCPA by
stating that suit may be brought “in an appropriate court of that State.” 47 U.S.C. § 227(b)(3). 
Interpreting the “if otherwise permitted” provision to have the same meaning “would be redundant
and risk rendering the words meaningless.” Chair King, 135 S.W.3d at 382. 
            The strongest argument supporting the “acknowledgment” approach emphasizes the statutory
proviso’s reference to court rules: “if otherwise permitted by the laws or rules of court of a State
. . . .” 47 U.S.C. § 227(b)(3) (emphasis added). “Rules of court” generally refer to the procedures
courts implement to conduct official business. See, e.g., Black’s Law Dictionary 369 (7th ed.
1999) (defining “court rules” as “[r]egulations having the force of law governing practice and
procedure in the various courts”). Plaintiffs assert that by referencing “rules of court,” which
generally do not confer subject-matter jurisdiction over causes of action, Congress chose to
acknowledge states’ rights to independently administer their own courts and, by negative
implication, signaled no intent to require affirmative legislative action at the state level before a party
could exercise the private right of action. Any other interpretation, plaintiffs claim, would render
the “rules of court” language mere surplusage. See Spradlin v. Jim Walter Homes, Inc., 34 S.W.3d
578, 580 (Tex. 2000). However, applying an “acknowledgment” interpretation to the statutory
proviso is no less problematic. As we have said, the same rule against surplusage is equally
applicable to the “acknowledgment” interpretation. See Chair King, 135 S.W.3d at 381 (stating “it
would be redundant and risk rendering the words meaningless to interpret the ‘if otherwise
permitted’ clause to have the same meaning [as the clause allowing suit ‘in an appropriate court of
that State’]”). Moreover, if the statutory reference to “rules of court” was intended to imply no state
option over allowing the federally created claim, the “if otherwise permitted by the laws . . . of a
State” language would be rendered surplusage. 47 U.S.C. § 227(b)(3) (emphasis added); see
Spradlin, 34 S.W.3d at 580. 
            In sum, we see no clear indication in either the statutory language or the legislative history
that would indicate Congress intended to unconditionally mandate a private TCPA damage claim
in state court that the states could not choose to decline. Like the court of appeals, we reject the
“acknowledgment” interpretation of the TCPA that some courts have followed. 
            Having determined that the statutory proviso was intended to give the TCPA some
conditional effect, we must decide whether Congress intended for the Act to apply unless a state
opted out, or only if a state opted in.
2. The “Opt-out” Approach
            The “opt-out” interpretation reads the TCPA to immediately authorize private rights of action
in state court without the necessity of affirmative state action, but allows states to legislatively
decline to entertain them. To date, this appears to be the majority view of the relatively few courts
that have had occasion to decide the issue. See Mulhern v. MacLeod, 808 N.E.2d 778 (Mass. 2004);
Lary v. Flasch Bus. Consulting, 878 So. 2d 1158 (Ala. Civ. App. 2003); Condon v. Office Depot,
Inc., 855 So. 2d 644 (Fla. Dist. Ct. App. 2003); Kaufman v. ACS Sys., Inc., 2 Cal. Rptr. 3d 296 (Cal.
Ct. App. 2003); Reynolds v. Diamond Foods & Poultry, Inc., 79 S.W.3d 907 (Mo. 2002); Zelma v.
Market U.S.A., 778 A.2d 591 (N.J. Super. Ct. App. Div. 2001); Aronson v. Fax.com, Inc., 51 Pa. D.
& C.4th 421 (Ct. Com. Pl. 2001); Hooters of Augusta, Inc. v. Nicholson, 537 S.E.2d 468 (Ga. Ct.
App. 2000); Schulman v. Chase Manhattan Bank, 710 N.Y.S.2d 368 (N.Y. App. Div. 2000). Of the
courts that follow the “opt-out” position, none has yet determined that a state has actually opted out
of providing a forum for private TCPA claims. 
            Until this case, only one court of appeals in Texas has had occasion to interpret section
227(b)(3)’s “if otherwise permitted” proviso,


 and it determined that the statute’s plain language
compelled an “opt-in” interpretation; that is, a state must affirmatively act before the federally-created claim is cognizable in its courts. Autoflex Leasing, Inc. v. Mfrs. Auto Leasing, 16 S.W.3d
815, 817 (Tex. App.—Fort Worth 2000, pet. denied). The court held that the “plain and ordinary”
meaning of the statutory proviso indicates “Congress intended the states to pass legislation or
promulgate court rules consenting to state court actions based on the TCPA, before such suits under
the TCPA may be brought in state courts.” Id. Because Texas did not authorize a private right of
action in state court under the TCPA until September 1, 1999, and the faxes at issue in Autoflex were
sent before the state legislation became effective, the court affirmed the trial court’s judgment
dismissing the plaintiff’s claim. Id. at 817-18. 
            In this case, the court of appeals rejected the Autoflex interpretation in favor of the “opt-out”
approach for several reasons, some of which have similarly led other courts along the same path. 
Chair King, 135 S.W.3d at 379. Those reasons, generally, are that the “opt-out” interpretation gives
greater deference to the Supremacy Clause, id. at 382, and the “opt-in” position is “inefficient and
ineffective” considering Congress’s intention to help states regulate unsolicited interstate faxes. Id.
at 380. We examine each of these considerations in turn. 
            The court of appeals rejected the “acknowledgment” notion that the Supremacy Clause
mandates unconditional state enforcement of private TCPA damage claims because of internal
inconsistencies in the statutory language such an interpretation would create. Id. at 381-82. If
Congress wished to unconditionally mandate TCPA enforcement in state courts, the court of appeals
explained, it could easily do so by amending the TCPA and preempting state statutes to the contrary. 
Id. at 382. But at the same time, by construing the TCPA private right of action as mandatory unless
a state legislatively declines enforcement, it appears the court of appeals attempted to give a nod to
Supremacy Clause concerns. Id. Of course, Congress’s ability to clarify the extent of its mandate
by amending the statute is the same whether the proviso is construed as “acknowledgment,” “opt-out,” or “opt-in.” More importantly, as we have said, the TCPA defines the federal cause of action
with a prominent proviso; giving effect to the proviso that Congress created cannot run afoul of the
Supremacy Clause. Having concluded that Congress intended the statutory proviso to have some
conditional effect, be it “opt-out” or “opt-in,” we fail to see how Supremacy Clause concerns are
implicated at all. 
            The court of appeals also reasoned that the “opt-in” approach does not comport with
Congress’s purpose to help states regulate and penalize illegal fax advertisements by overcoming
their inability to regulate interstate faxes. Id. at 380. The court posited that there would be no reason
for Congress to create a statutory remedy that would allow states to regulate illegal interstate faxes
but at the same time prohibit them from doing so until the state enacted enabling legislation; such
a result would be, the court concluded, “inefficient and ineffective.” Id. (citing Aronson, 51 Pa. D.
& C.4th at 429).
            This interpretation, though, ignores the unique nature of the federal right of action the TCPA
created. Rather than make federal court jurisdiction over private TCPA claims concurrent with that
of state courts, Congress chose to make the private remedy available exclusively through state-court
proceedings. Such a conscious decision was undoubtedly due, at least in part, to the estimated
eighteen million telemarketing calls made daily. Telephone Consumer Protection Act of 1991, Pub.
L. No. 102-243, § 2(3), 105 Stat. 2394 (1991); see Int’l Sci. & Tech. Ins., Inc. v. Inacom Commc’ns,
Inc., 106 F.3d 1146, 1157 (4th Cir. 1997). Understandably, Congress opted to close federal courts
to the millions of potential private TCPA claims since the overwhelming locus of regulation was
centered in the states. Int’l Sci., 106 F.3d at 1154. It is not unreasonable to presume, then, that
Congress recognized the potential burden on state courts these claims could present. “Congress
acted rationally in both closing federal courts and allowing states to close theirs to the millions of
private actions that could be filed if only a small portion of each year’s 6.57 billion telemarketing
transmissions were illegal under the TCPA.” Id. Considering the potential burden on state court
resources a flood of private TCPA claims might present, it is logical that Congress would choose to
allow the states themselves to have some voice in the matter. Id. (holding “that private actions under
the TCPA may be permitted in some state courts and prohibited in others, as determined by the
states, does not render the TCPA violative of the equal protection component of the Fifth
Amendment’s Due Process Clause”) (emphasis added). “States thus retain the ultimate decision of
whether TCPA actions will be cognizable in their courts.” Id. at 1158.
            We think it significant that the reason Congress created the TCPA private right of action at
all was “out of solicitude for states which were thwarted in their attempts to stop unwanted
telemarketing.” Id. at 1154. Congress noted in the TCPA: “Over half the States have statutes
restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions
through interstate operations; therefore, Federal law is needed to control residential telemarketing
practices.” Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(7), 105 Stat.
2394 (1991). The principal motivation behind the TCPA strongly suggests that its remedies were
meant to enhance the states’ existing attempts to regulate unsolicited calls and faxes. As the Fourth
Circuit noted, “although Congress created the private TCPA action, it was from the beginning a
cause of action in the states’ interest.” Int’l Sci., 106 F.3d at 1154. There is strong evidence that
Congress wanted to assist state regulation in reaching interstate communications if a state so desired,
not to create an independent regulatory framework for a potential flood of individual state-court
lawsuits. 
            In sum, we do not believe the Supremacy Clause concerns and purported inefficiencies that
some courts have perceived in adopting an “opt-out” approach are valid in light of the explicit
statutory proviso and the TCPA’s purpose to supplement state efforts to regulate unsolicited faxes. 
Instead, we consider the Congressional intent underlying the TCPA, as expressed in the statutory
proviso and legislative history, to favor the “opt-in” interpretation. 
3. The “Opt-in” Interpretation
            We must begin with the text of the statutory proviso. See New York State Conf. of Blue
Cross and Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) (in determining
congressional intent, analysis begins with interpretation of the statutory text and “move[s] on, as
need be, to the structure and purpose of the Act in which it occurs”); Mitchell Energy Corp. v.
Ashworth, 943 S.W.2d 436, 438 (Tex. 1997) (noting that in construing a statute, a court’s primary
objective is to give effect to the Legislature’s intent by considering the plain meaning of the
enactment). Our challenge in this case is discerning the level of deference to the states embodied
in the phrase “if otherwise permitted by the laws or rules of court of a State.” 47 U.S.C. § 227(b)(3).
            We believe the requirement that states must “otherwise permit” a private right of action
before a TCPA claim is cognizable in their courts can only mean that the TCPA alone does not create
an immediately enforceable right. The term “otherwise” denotes “(1) in a different way or manner:
DIFFERENTLY; (2) in different circumstances: under other conditions.” Webster’s Third New
International Dictionary (1961). And “permit” is defined as “(1) to consent to expressly or
formally: grant leave for or the privilege of: ALLOW, TOLERATE; (2) to give (a person) leave:
AUTHORIZE; . . . (4) to make possible.” Id. Use of the words “otherwise permitted,” then,
suggests the necessity of affirmative state action to activate the TCPA’s private cause of action. 
            Congressional intent underlying the TCPA also supports an “opt-in” reading of the statutory
proviso. As we have said, the federal legislation was intended to supplement state regulation, and
Congress was surely conscious that state courts could suddenly be burdened with a potential flood
of unsolicited-fax suits. It is clear that Congress intended significant deference to states, allowing
them to determine whether to entertain the private TCPA claims that Congress decided to make
exclusively actionable in state court. Int’l Sci., 106 F.3d at 1156.


 We believe the “if otherwise
permitted” language Congress crafted in creating the federal TCPA private right of action indicates
deliberate deference to an area of uniquely state concern. Id. 
            It is true, as the plaintiffs assert, that “the statute’s intended and most important purpose [is]
to swiftly wipe out unsolicited facsimile advertising.” But we believe Congress hinged the swiftness
of the federal legislation on the willingness of states to bear the burden and cost of overseeing these
claims. After all, the TCPA provides a federal enforcement mechanism by which state attorneys
general may protect residents if the state wishes to direct state resources elsewhere: 
If state residents would prefer their government to devote its attention and resources
to problems other than those deemed important by Congress, they may choose to
have the Federal Government rather than the State bear the expense [and
administrative burden] of [the TCPA] . . . . Where Congress [thus] encourages state
regulation rather than compelling it, state governments remain responsive to the local
electorate’s preferences; state officials remain accountable to the people.
Int’l Sci., 106 F.3d at 1158 (quoting New York v. United States, 505 U.S. 144, 168 (1992)). Thus,
that the Texas Legislature did not specifically authorize a private right of action for unsolicited faxes
until 1999 does not mean that Texas residents were without recourse; they were free to encourage
the Texas Attorney General to pursue TCPA injunctive and other relief on their behalf. See 47
U.S.C. § 227(f)(1)-(2). 
            Plaintiffs further contend an “opt-in” interpretation would render the TCPA’s preemption
language meaningless. Section 227(e) provides that the TCPA does not preempt state laws imposing
more restrictive requirements or even prohibiting the use of telemarketing equipment. 47 U.S.C. §
227(e). Plaintiffs claim the negative implication suggests that less restrictive penalties are indeed
preempted. If the TCPA were inoperative absent enabling legislation, the plaintiffs assert, then the
TCPA could not preempt less restrictive state law and the section would be rendered meaningless. 
Of course, the same argument would apply to the “opt-out” approach; if a state opted out then the
preemption language would be equally meaningless. Only an “acknowledgment” interpretation,
which we have rejected, would give full effect to subsection (e) if in fact it were intended to preempt
less restrictive state penalties. But we do not agree with the plaintiffs’ reading of section 227(e).
            First, we note that section 227(e)(1) is specifically titled “State law not preempted.” 47
U.S.C. § 227(e) (1) (emphasis added). Furthermore, Congress’s intent to supplement state
legislation explains why the preemption concern would have focused on more aggressive regulation
by the states. See Chair King, 131 F.3d at 513 (“By creating a private right of action in state courts,
Congress allowed states, in effect, to enforce regulation of interstate telemarketing activity.”). 
Congress clearly did not intend the TCPA to establish a ceiling if states decided to be more
aggressive in their approach, but it does not necessarily follow that Congress intended the TCPA to
be a mandatory floor for private enforcement whether or not a state chose to allow it. See Medtronic,
Inc. v. Lohr, 518 U.S. 470, 485 (1996) (“In all preemption cases, and particularly in those [where]
Congress has ‘legislated . . . in a field which the States have traditionally occupied,’ we ‘start with
the assumption that the historic police powers of the States were not to be superseded by the Federal
Act unless that was the clear and manifest purpose of Congress.’”); Bethlehem Steel Co. v. New York
State Labor Relations Bd., 330 U.S. 767, 780 (1947) (internal citations omitted) (“Any indulgence
in construction should be in favor of the States, because Congress can speak with drastic clarity
whenever it chooses to assure full federal authority, completely displacing the States.”). We reject
the plaintiffs’ contention that the TCPA’s limited preemption language forecloses an “opt-in”
interpretation.
III. ConclusionWe conclude that, because Texas did not otherwise permit a cause of action for the receipt
of unsolicited fax advertisements until September 1, 1999, and the faxes at issue in this case were
sent before that date, plaintiffs have no actionable claim. Because this conclusion is dispositive, we
do not reach the parties’ other arguments involving the limitations period applicable to TCPA claims
and the application of Texas agency law under the facts presented here. Accordingly, we reverse the
judgment of the court of appeals and render judgment in favor of GTE Mobilnet. 


 
____________________________________
Harriet O’Neill
Justice

OPINION DELIVERED: February 3, 2006.